1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16

N.R., a minor, by and through B.R., his
Guardian Ad Litem,

                 Plaintiff,

     v.

SAN RAMON VALLEY UNIFIED SCHOOL
DISTRICT,

                 Defendants.

_____/

No. C 06-1987 MHP

**<u>MEMORANDUM & ORDER</u>**
**Re: Cross-Motions for Summary
Judgment**

17
18
19
20
21
22
23
24
25
26
27
28

      Plaintiff N.R. ("plaintiff"), by and through his guardian ad litem, B.R., brings this action against the San Ramon Valley Unified School District ("the District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. sections 1400 <u>et seq.</u>, seeking attorneys' fees and reversal of a state Office of Administrative Hearings ("OAH") decision.  Specifically, plaintiff contests the determination of the Administrative Law Judge ("ALJ") that the District offered free appropriate public education ("FAPE") to plaintiff during the 2004–2005 regular school year, the 2005 extended school year ("ESY"), and the 2005–2006 regular school year.  Now before this court are the parties' cross-motions for summary judgment.  After having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

UNITED STATES DISTRICT COURT
For the Northern District of California

BACKGROUND

I.        Statutory Background

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  A state satisfies the requirement of providing FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."  Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 203 (1982) (hereinafter "Rowley").  The education required by the IDEA is tailored to the student's unique needs by the development of an "individualized educational program" ("IEP"), which is prepared at a meeting convened for that purpose.  Rowley, 458 U.S. at 181.

In addition to its substantive requirements, the IDEA provides procedural safeguards, violations of which may constitute denial of FAPE.  Amanda J. ex rel. Annette J. v. Clark County Sch. Dist., 267 F.3d 877, 892 (9th Cir. 2001).  Among the most important of procedural safeguards are those that protect parents' rights to be involved in the development of their child's IEP.  Id. at 882.  Procedural violations that "result in the loss of educational opportunity," "seriously infringe the parents' opportunity to participate in the IEP formulation process," or "caus[e] a deprivation of educational benefits . . . clearly result in the denial of FAPE."  Id. (internal quotations omitted).  Under the IDEA, these three inadequacies are the only procedural violations that can support a Hearing Officer's finding of a denial of FAPE.  20 U.S.C. § 1415(f)(3)(E)(ii).  California has implemented the mandated procedural safeguards in California Education Code sections 56500 through 56507.

Given the substantive and procedural requirements of the IDEA, a reviewing district court conducts a two-step inquiry: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures

1    reasonably calculated to enable the child to receive educational benefits?" Rowley, 458 U.S. at

2    206–207 .

3

4    II.    Facts[1]

5         At all relevant times, plaintiff was a ten-year-old student diagnosed with autism, severe

6    mental retardation and mild cerebral palsy.  Plaintiff's conditions have rendered him non-verbal and

7    subject to severe behavioral deficits, and plaintiff requires several powerful medications to address

8    his behaviors and reactions to his environment.  Plaintiff is eligible for special education and related

9    services, and his special needs consist of: development of social skills and independent living skills,

10   augmentive and alternative communication services ("AAC"), functional academics, speech and

11   language, occupational therapy, and behavioral services.  Plaintiff has received special education

12   services through the District since age five.

13        In June 2003, plaintiff filed a complaint against the District alleging that the District failed to

14   provide appropriate behavioral support services, and that plaintiff was entitled to receive

15   compensatory education.  Plaintiff and the District resolved the dispute via a settlement agreement

16   executed in August 2003 ("the settlement agreement").  At the time, plaintiff's behavior services

17   provider was Synergistic Interventions ("SI").  The settlement agreement set forth plaintiff's

18   program for the regular 2003–2004 school year, and provided that an IEP meeting would be held no

19   later than December 15, 2003.  The agreement also provided that a "transition team meeting" would

20   be held prior to the December 2003 IEP meeting.  The transition team meeting would be held to

21   develop a "criteria-based transition plan" to transition from SI to a "qualified District staff or

22   another qualified NPA [non-public agency] and, ultimately, to transition [N.R.] out of the home

23   program."  The agreement specified that plaintiff's teachers, service providers, and home program

24   provider (SI) would attend the transition plan team meeting.  Finally, the agreement stipulated that

25   any proposed transition from SI to qualified District staff or another qualified NPA must first be

26   approved by the IEP team.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    On September 24, 2004, the District convened an IEP meeting in order to discuss the

2    District's proposal to transition behavior supervisor services at home and school from SI to

3    Psychology, Learning and You ("PLAY"), an NPA, and to transition 1:1 behavior support services

4    from SI to District staff.  A transition plan was developed at the meeting and sent to plaintiff's

5    parents for their consent.  The District sent letters seeking approval on October 20, 2004 and

6    October 26, 2004.

7    Another IEP meeting was held on November 10, 2004, with plaintiff's parents and SI

8    representatives in attendance.  At this meeting, plaintiff's parents and the District agreed upon

9    another IEP, providing for services from November 10, 2004 through at least March 24, 2005[2] ("the

10   November IEP").  This was the last agreed-upon IEP between the parties.

11   Plaintiff continued to receive behavioral services through SI until February 2005.  On

12   February 21, 2005, SI notified plaintiff's parents that SI would stop providing services to plaintiff

13   immediately due to an ongoing billing dispute with the District.  Plaintiff's parents alerted the

14   District to this fact, and the following day removed plaintiff from his District classroom placement

15   and placed him privately.  Plaintiff remained at the private placement at least until Fall 2005.  That

16   same day, the District sent a letter to plaintiff's parents offering District employee Patricia Onizuka

17   as a 1:1 paraeducator and PLAY as a behavioral support provider.

18   On April 5, 2005, plaintiff's annual IEP meeting took place.  At this meeting, plaintiff's

19   parents introduced a representative from Stepping Stones, an NPA and behavior support services

20   provider.  The Stepping Stones representative had assessed plaintiff's behavioral needs and at that

21   time was providing a home-based program to plaintiff at plaintiff's parents' expense.  Plaintiff's

22   parents requested that the District contract with Stepping Stones to provide behavioral services to

23   plaintiff, and the District refused.  An IEP was developed on this date, but plaintiff's parents did not

24   agree to its terms.  The IEP team agreed to reconvene on April 21, 2005 to continue the IEP.

25   On April 13, 2005, the District sent a written notice (entitled "Prior Written

26   Notice/Placement Offer") to plaintiff's parents advising them of its denial of their request to contract

27

28

4

1   with Stepping Stones.  The notice stated that the District already had a qualified NPA, PLAY, to

2   provide support services for plaintiff at home and school.

3        The District worked with plaintiff's parents to reschedule the IEP meeting, ultimately

4   agreeing on May 24.  The IEP team met again on May 24, 2005 and a revised IEP was developed.

5   Again, plaintiff's parents declined to agree to the terms of the IEP.  The team met again on June 14,

6   2005 and developed another IEP.  The June 14 meeting occurred during the final week of the

7   2004–2005 school year.  Plaintiff's academic goals were agreed upon at the June 14 meeting, though

8   plaintiff's parents and the District still disagreed regarding the appropriate NPA and plaintiff's

9   parents therefore did not agree to the IEP.  Plaintiff's parents once again requested that the District

10  contract with Stepping Stones.  On June 16, 2005, the District sent plaintiff's parents a second notice

11  (entitled "Prior Written Notice") which refused the request and stated that PLAY and the District

12  staff were qualified to provide services.

13       Plaintiff's goals as set forth in the June 14 IEP were revised on June 20, 2005 by Angela

14  Connor, the District's behavior analyst.[3]  On June 24, the District sent plaintiff's parents a letter

15  advising them that the 2005 ESY was beginning on June 28, and providing them a "description of

16  the District's complete proposed offer for Summer 2005 and the 2005–06 school year."[4]  The letter

17  enclosed a copy of the revised goals and objectives prepared by Connor.

18       In the meantime, plaintiff had filed a separate action alleging breach of the settlement

19  agreement.  On June 27, 2005, pursuant to a court-imposed mediation in that matter, the District's

20  attorney sent plaintiff's attorney a proposed settlement agreement which included proposed

21  programs for plaintiffs for the 2005 ESY and the 2005–2006 regular school year.  Plaintiff did not

22  accept the District's proffered classroom program, home program, or behavioral goals and services

23  for either the 2005 ESY or the 2005–2006 regular school year.

24

25  III.    <u>Procedural History</u>

26       On July 25, 2005 the District filed a due process action seeking to establish that it had

27  offered and provided FAPE for the 2004–2005 regular school year, and that it had offered FAPE for

28

1  the 2005 ESY and the 2005–2006 regular school year.  The matter was heard by the California

2  OAH.  The parties stipulated for the purposes of the due process action and this appeal that AAC

3  goals and services were not at issue for any of the three school periods in question, and that

4  occupational therapy goals and services, and speech and language goals and services, were at issue

5  from March 25, 2005 through the end of the 2004–2005 regular school year only.

6        Trial was conducted in the due process action before an ALJ from September 27 to October

7  7, 2005.  On December 15, 2005 the ALJ issued a decision finding for the District in all respects.

8  Specifically, the ALJ found that the District's offers for the three academic periods constituted

9  FAPE.

10       On March 15, 2006 plaintiff filed a complaint against the District in this court, seeking

11  review of the ALJ's decision pursuant to 20 U.S.C. section 1415(i).  Specifically, plaintiff argues

12  that the ALJ's findings that the District offered FAPE to plaintiff during the 2004–2005 regular

13  school year, the 2005 ESY, and the 2005–2006 regular school year are not supported by evidence

14  and are incorrect as a matter of law.  Plaintiff further contends that the ALJ failed to make careful,

15  thorough and impartial findings, failed to make required factual findings, made findings of fact that

16  were clearly erroneous, and failed to conduct the proper legal analysis.  Plaintiff seeks a finding that

17  the District failed to offer FAPE to plaintiff during the three academic terms at issue, and a finding

18  that plaintiff was the prevailing party in the administrative hearing and therefore entitled to attorney

19  fees and costs.  The administrative record has been lodged with this court, and the parties have

20  stipulated that the court decide this matter based solely on the record without considering additional

21  evidence.

22

23  LEGAL STANDARDS

24  I.    Summary Judgment

25        Summary judgment is proper when the pleadings, discovery and affidavits show that there is

26  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

27  matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

2   genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

3   party.  Id.  The party moving for summary judgment bears the burden of identifying those portions

4   of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

5   fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party

6   will have the burden of proof at trial, the moving party need only point out "that there is an absence

7   of evidence to support the nonmoving party's case."  Id. at 325.

8        Once the moving party meets its initial burden, the nonmoving party must go beyond the

9   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

10   genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

11   party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959–60

12   (9th Cir. 1994).  Nor is it sufficient for the opposing party simply to raise issues as to the credibility

13   of the moving party's evidence.  National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97

14   (9th Cir. 1983).  If the nonmoving party fails to show that there is a genuine issue for trial, "the

15   moving party is 'entitled to judgment as a matter of law.'"  Celotex Corp., 477 U.S. at 323 (quoting

16   Fed. R. Civ. P. 56(c).

17

18   II.   Judicial Review of IDEA Claims

19        The IDEA provides that a party aggrieved by the findings and decision made in a state

20   administrative due process hearing has the right to bring an original civil action in a state court of

21   competent jurisdiction or in federal district court in order to secure review of the disputed findings

22   and decision.  See 20 U.S.C. § 1415(i)(2).  The party challenging the decision bears the burden of

23   persuasion on its claim.  Clyde K. v. Puyallup Sch. Dist., No. 3, 35 F.3d 1396, 1399 (9th Cir. 1994),

24   superseded by statute on other grounds.  The statute provides that the court "(i) shall receive the

25   records of the administrative proceedings; (ii) shall hear additional evidence at the request of a

26   party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the

27   court determines is appropriate."  20 U.S.C. § 1415(i)(2)(c).  "Equitable considerations are relevant

28

7

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    in fashioning relief" under the IDEA.  School Comm. of Burlington, Mass. v. Dep't of Educ., 471

2    U.S. 359, 374 (1985).  By nature, equitable relief is a fact-specific inquiry in which the Ninth Circuit

3    has held that "[t]he conduct of both parties must be reviewed to determine whether relief is

4    appropriate."  Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1496 (9th Cir.

5    1994) (internal citations omitted).

6         Judicial review of state administrative proceedings under the IDEA is less deferential than

7    the review of other agency actions.  Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir.

8    1993).  However, "[b]ecause Congress intended states to have the primary responsibility for

9    formulating each individual child's education, [courts] must defer to their 'specialized knowledge

10   and experience' by giving 'due weight' to the decisions of the states' administrative bodies."

11   Amanda J, 267 F.3d at 888 (quoting Rowley, 458 U.S. at 206–08).  This review requires the district

12   court to carefully consider the administrative agency's findings.  Susan N. v. Wilson Sch. Dist., 70

13   F.3d 751, 758 (3rd Cir. 1995).  "The amount of deference accorded the hearing officer's findings

14   increases where they are thorough and careful."  Capistrano Unified Sch. Dist. v. Wartenberg by and

15   through Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (internal quotations omitted).  After such

16   consideration, "the court is free to accept or reject the findings in part or in whole."  Susan N., 70

17   F.3d at 758.  When the court has before it all the evidence regarding the disputed issues, it may make

18   a final judgment in what "is not a true summary judgment procedure," but "a bench trial based on a

19   stipulated record."  Ojai, 4 F.3d at 1472.

20

21   DISCUSSION

22   I.    Plaintiff's Specific Challenges to the ALJ's Findings

23        Plaintiff argues that the ALJ's findings contain numerous errors and therefore the OAH

24   decision is not entitled to deference.  Plaintiff cites these errors for the purpose of establishing the

25   appropriate level of deference for this court to afford the ALJ's decision.  However, because many

26   of plaintiff's specific objections relate to the core substantive issues of the case, the court will

27   engage in a thorough analysis of each of the plaintiff's objections.

28

8

UNITED STATES DISTRICT COURT
For the Northern District of California

A.    Factual Challenges

1.    Determination Regarding the June IEP Offer

Plaintiff objects to the ALJ's finding that "the IEP document contained the offer for ESY 2005 and for the 2005–2006 school year," and that the IEP team "had spent a great deal of time developing and discussing the IEP for those time periods."  OAH Decision at 4 ¶ 14 (hereinafter "Decision").  Plaintiff objects to this on the grounds that the ALJ "failed to make any attempt to recite what elements or program components he considered to comprise either of the offers," and that this finding is contradicted by the record.  It is unclear why plaintiff objects to this seemingly uncontroversial finding.  It appears undisputed that the District made an IEP offer on June 14, 2005, and that the IEP team had met several times since April 5 to develop the IEP.  The sufficiency of the offer is in dispute, but the specific finding of fact challenged by plaintiff asserts only that the offer was made, not that it constituted FAPE.

2.    Determinations Regarding Qualifications of Service Providers

Next, plaintiff challenges the ALJ's findings that the District employees and PLAY personnel were "well-qualified" to provide services.  Plaintiff disputes the findings regarding district employees Elaine Marchetti, Linda Wilock, and Patricia Onizuka, and PLAY owner Cheryl Markowitz.  Plaintiff alleges that, in reaching its conclusion that these individuals were well-qualified, the ALJ gave no apparent weight to the abilities or testimony of Liz Isono, plaintiff's occupational therapy services provider who testified at the hearing.  Plaintiff further claims that the ALJ discounted plaintiff's mother's testimony regarding Marchetti and Onizuka.  Plaintiff also objects to the ALJ's reliance on what plaintiff characterizes as hearsay evidence regarding individuals who did not testify at the due process hearing.

As to Marchetti, the ALJ based its determination on Marchetti's Master's Degree in Speech Pathology and Audiology, her prior work experience in the area of speech and language services in private and public settings, her prior experience working with severely handicapped children, and

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

the fact that her references were checked prior to employment.  Decision at 6 ¶ 26.  The ALJ addressed plaintiff's mother's testimony in a footnote, noting plaintiff's mother's observations and objections to Marchetti.  Plaintiff's mother observed Marchetti interacting with plaintiff at her home and "things did not go well."  Id. at 6 n.5.  Plaintiff's mother asserted that Marchetti appeared "uncomfortable and unfamiliar with [plaintiff] and his IEP, that she used the AAC device inappropriately, and asked [plaintiff] to say "elephant" even though [plaintiff] is non-verbal."  Id.  The ALJ concluded that plaintiff's mother's "account of the one-time observation does not change the finding that Ms. Marchetti was qualified and capable of providing S/L services to [plaintiff]."  Id.  Plaintiff directs the court to no further testimony regarding Marchetti.  Although the analysis of plaintiff's mother's testimony was relegated to a footnote rather than the main text, the ALJ set forth plaintiff's mothers objections to Marchetti and explicitly found that plaintiff's mother's one-time observations did not outweigh the evidence supporting Marchetti's qualifications.  The ALJ's analysis in this regard was suitably thorough and therefore entitled to deference.

Regarding Linda Wilock, who took over for Marchetti in March 2005, the ALJ again weighed the factors for and against a finding that Wilock was well-qualified to provide services to plaintiff.  The ALJ found that, although Wilock "never met [plaintiff] since he was not in school when she was hired, . . . she had reviewed his files that contained his goals and objectives, as well as daily notes written by Ms. Marchetti . . ."  Id. at 7 ¶ 27.  The remaining information provided by the ALJ regarding Wilock focuses on her participation in the development of goals and objectives, her attendance at the IEP meetings on April 5 and May 24, and her presentation of progress reports and goals regarding plaintiff.  Id. at 7 ¶¶ 27–28.  The ALJ further noted that Wilock consulted with plaintiff's AAC provider and presented the revised goals at the June IEP meeting, that the IEP team did not dispute the goals, and that plaintiff's parents did not express any objection at the June IEP meeting.  Id. at 7 ¶ 29.  Although the ALJ's factual support for Wilock's qualification is less extensive, plaintiff points to nothing in the record to contradict the ALJ's conclusion.  It may have been better if Wilock had met with plaintiff before she was hired.  However, given the fact that she took significant steps to familiarize herself with plaintiff's needs, the fact that plaintiff's parents had

UNITED STATES DISTRICT COURT
For the Northern District of California

1    removed plaintiff from the District placement and placed him privately, and the fact that plaintiff's

2    parents did not object to Wilock at the IEP meeting, Wilock's failure to meet with plaintiff is not

3    sufficient to negate or otherwise adversely affect the ALJ's findings.

4         Regarding Markowitz, the owner of PLAY, the ALJ stated that Markowitz "has an

5    impressive educational background, extensive work experience, and is well qualified to assume the

6    role of providing behavioral support and services to [plaintiff]."  Id. at 8 ¶ 33.  The ALJ further

7    noted that Markowitz "had worked with students with needs similar to [plaintiff's] and could

8    implement goals appropriate to providing educational benefit to [plaintiff] and his unique needs."

9    Id.  Again, plaintiffs point to nothing in the record to contradict this finding.  Although plaintiff

10   asserts that the ALJ "gave no apparent weight to either the abilities or the testimony of Liz Isono" in

11   addressing the qualifications of Markowitz, the qualifications of one service provider have no

12   bearing on the qualifications of another.  Plaintiff is not entitled to his choice of service providers.

13   See Slama ex rel. Slama v. Indep. Sch. Dist. No. 2580, 259 F. Supp. 2d 880, 885 (D. Minn. 2003)

14   (holding that the district's refusal to assign the service provider of plaintiff's choice did not

15   constitute a denial of FAPE).  The Act requires only that the service provider be able to meet his

16   needs.  In any case, plaintiff does not cite any specific testimony by Isono that would inform the

17   determination as to Markowitz's qualifications.

18        Finally, with regard to Patricia Onizuka, the ALJ found that "there was ample testimony by

19   credible district witnesses who were familiar with her qualifications and experience, and who had

20   observed her in the classroom" to support the conclusion that Onizuka was well-qualified.  Id. at 8 ¶

21   36.  The ALJ noted that Onizuka did not testify herself.  Id.  The ALJ once again discussed

22   plaintiff's mother's testimony in a footnote, stating that plaintiff's mother met with Onizuka in what

23   "appeared to be a formal interview that left Ms. Onizuka in tears."  Id. at 9 n.6.  The ALJ further

24   stated that "[i]n spite of the 'interview' conducted by [plaintiff's mother], there was no indication

25   that Ms. Onizuka was anything other than qualified to assume the role as [plaintiff's] one-to-one

26   aide when he returned to school."  Id.  Once again, the ALJ weighed the evidence and determined

27   that Onizuka was qualified.  Significantly, the ALJ specifically cited a credibility determination in

28

11

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    support of its conclusion regarding Onizuka.  Given the fact that the ALJ heard live testimony and

2    was therefore better equipped to evaluate witness credibility, this court should defer to the ALJ's

3    findings in this regard.  See Amanda J., 267 F.3d at 889 (noting the "general principles of

4    administrative law which . . . recogniz[e] that a [Hearing Officer] who receives live testimony is in

5    the best position to determine issues of credibility").

6         In regards to these factual disputes, plaintiff conclusorily alleges that "[t]he ALJ decision

7    amply demonstrates a clear bias towards the Defendant and against Plaintiff."  Apart from the fact

8    that the ALJ disagreed with plaintiff on these factual issues, there is no evidence of bias.  Plaintiff

9    also objects to the fact that the ALJ made findings regarding these four individuals when they did

10   not testify at the hearing.  Wilock and Markowitz did testify at the hearing, however, and the ALJ's

11   findings were further based on testimony by others who were familiar with the individuals, and on

12   other documentary evidence that was appropriate for the ALJ to consider.  Further, hearsay is

13   admissible in administrative proceedings for certain purposes.  Cal. Gov. Code § 11513(d).[5]

14        In short, plaintiff has failed to demonstrate that the ALJ's factual determinations regarding

15   the qualifications of the service providers at issue is entitled to less deference than what is normally

16   available in IDEA review proceedings.

17

18              3.    Alleged Lack of Required Factual Findings

19        Plaintiff also asserts that the ALJ made no factual findings regarding the appropriateness of

20   either the proposed classroom placements, the draft behavioral goals or the offered behavioral

21   support supervision and consultation services for plaintiff's specific needs.  Plaintiff further asserts

22   that the ALJ failed to discuss any specific aspect of the classroom program or the behavioral

23   component of the IEP programs offered for any of the three periods in question, and that the ALJ

24   failed to identify any specific evidence to support the claim that the offered classrooms, behavioral

25   goals and behavior consultation would address plaintiff's specific educational needs.  Rather, the

26   ALJ simply stated that the offers provided FAPE for each time period.

27

28

1    The District asserts that the ALJ did make determinations in this regard.  The District cites

2  Findings 19–20, in which the ALJ found that plaintiff's teacher at Twin Creeks was well-qualified,

3  and that the teacher followed the goals and objectives dated March 25, 2004 that had been

4  established for plaintiff.  These findings address plaintiff's placement at Twin Creeks for the

5  2004–2005 school year only.  The ALJ further found that the IEP offered on June 14, 2005 would

6  adequately address plaintiff's needs.  Decision at 8–9 ¶¶ 33–36.  Regarding plaintiff's behavioral

7  goals, the ALJ stated, as discussed *supra*, that Markowitz was well-qualified to provide behavioral

8  services to plaintiff, and that District staff such as Onizuka or Angela Connor were also qualified to

9  provide behavioral services in the event that an agreement could not be reached regarding PLAY

10  (owned by Markowitz).  Furthermore, the ALJ devoted three specific findings, consisting of three

11  substantial paragraphs, to plaintiff's behavioral goals.  Decision at 9 ¶¶ 37–39.  The ALJ stated that

12  plaintiff's goals were discussed beginning at the May 24 IEP meeting.  The ALJ found plaintiff's

13  behavioral goals were presented and discussed at the June 14 meeting, and that at this meeting

14  plaintiff's attorney asserted that the behavioral goals were not appropriate and should be rewritten.

15  The behavioral goals were revised by Angela Connor subsequent to the meeting and mailed to

16  plaintiff's parents.

17    While the ALJ made substantial findings regarding the procedures behind plaintiff's

18  behavioral goals, the ALJ does not address the substance of these goals.  Rather, the ALJ simply

19  concluded that "the in home program and behavioral services were reasonably designed to meet

20  [plaintiff's] unique needs and to provide him educational benefit, and they comported with the

21  services he had been receiving."  Id. at 15 ¶ 33.  The only support that the ALJ offers for its

22  conclusion that the behavioral goals were appropriate is the assertion that the goals "comported with

23  the services [plaintiff] had been receiving."  There are no specific findings regarding the substantive

24  adequacy of the behavioral goals.  However, plaintiff does not specifically raise any substantive

25  objections to the goals.  Neither the ALJ nor the parties to this action point to anything in the record

26  indicating that the behavioral goals developed at the end of the 2004–2005 school year were

27  appropriate or inappropriate for plaintiff.

28

13

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    Likewise, the ALJ's decision contains no facts relating to the propriety of the classroom

2  placements for ESY 2005 and the 2005–2006 school year.  The District points to nothing in the

3  record indicating that the ALJ considered facts related to the classroom placements for these periods.

4    Accordingly, any arguments raised by plaintiff in his motion regarding the substantive

5  adequacy of plaintiff's classroom placements for ESY 2005 and the 2005–2006 school year, or the

6  substantive adequacy of plaintiff's behavioral goals, will be reviewed without deference to the

7  ALJ's non-existent determinations.

8

9                    4.    Alleged Failure to Consider Evidence

10    Finally, plaintiff alleges that the ALJ made clearly erroneous factual findings by ignoring

11  important evidence.  Plaintiff asserts that the ALJ ignored documentary evidence showing that

12  plaintiff's final classroom goals were not offered until the last week of the 2004–2005 school year,

13  denying appropriate goals for the last three months of that school year.  Plaintiff further asserts that

14  the ALJ ignored evidence showing the District's June draft of behavioral goals was never presented

15  before the end of the 2004–2005 school year and never discussed at any IEP meeting.  Plaintiff also

16  alleges that the ALJ ignored the evidence showing that the June 14 IEP offer omitted necessary

17  behavioral support supervision and consultation for the extended school year classroom, and ignored

18  evidence showing the IEP never discussed the appropriateness of the classroom placement offered

19  by the District for 2005–2006.  Plaintiff characterizes these omissions as missing program

20  components, and components offered without parental or teacher participation.  Defendants do not

21  meaningfully respond to these arguments, nor do they point to any portion in the ALJ's decision

22  addressing these issues.

23    Accordingly, any arguments raised by plaintiff in his motion regarding these issues will be

24  reviewed without deference to the ALJ's unsupported determinations.

25

26

27

28

                                    14

UNITED STATES DISTRICT COURT
For the Northern District of California

1

B.      Legal Challenges

2       In addition to his challenges to the ALJ's factual findings, plaintiff challenges several of the

3   ALJ's conclusions of law as either not supported by existing law or directly contrary to established

4   law.  The court will consider each challenged conclusion in turn.

5

6                   1.      Conclusion of Law No. 10

7       The ALJ concluded that the District complied with the required IDEA procedures because

8   the District's "conduct was reasonably calculated to gain the maximum input from the proper parties

9   into developing a correct IEP."  Plaintiff asserts that this finding is irrelevant and fails to comport

10  with the holdings in Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist., 317 F.3d 1072

11  (9th Cir. 2003), superseded by statute on other grounds, or W.G. v. Bd. of Target Range Sch. Dist.,

12  960 F.2d 1479 (9th Cir. 1992) (hereinafter "Target Range").

13      In Shapiro, 317 F.3d at 1077, the district scheduled an IEP meeting that the parents were

14  unable to attend due to scheduling conflicts.  The court held that "before [a district] can hold an IEP

15  meeting without a child's parents, the school district must document phone calls, correspondence,

16  and visits to the parents demonstrating attempts to reach a mutually agreed upon place and time for

17  the meeting."  Id. at 1078.  The court held that the district had not satisfied the procedural

18  requirements because "the Shapiros asked to reschedule the June 8 meeting; they did not refuse to

19  attend."  Id.

20      Likewise, the court in Target Range, 960 F.2d at 1484, held that the school did not comply

21  with the required IDEA procedures where the district "independently developed an IEP . . . without

22  the input and participation of" the child's parents or teacher, and "did not attempt to reconvene the

23  meeting in order to include the required participants."  The IDEA therefore requires specific efforts

24  to include the child's parents and teachers in the development of the IEP.  Conduct "reasonably

25  calculated to gain the maximum input from the proper parties" is not sufficient.  The ALJ therefore

26  applied the wrong standard in determining that the district complied with the procedural

27  requirements of the IDEA with respect to the 2004–2005 school year.

28

15

UNITED STATES DISTRICT COURT
For the Northern District of California

2.      Conclusion of Law No. 12

The ALJ concluded that "[f]rom March 2005 to the end of the school year, a full educational plan was in place to provide [plaintiff] with a FAPE.  The District did not violate their procedural responsibilities in formulating and implementing the IEP for the 2004–2005 school year."  Plaintiff asserts that the ALJ relied on the "stay put" nature of the November IEP to reach this conclusion, but that the ALJ cited no legal authority supporting the conclusion that a "stay put" provision necessarily provides FAPE when a new IEP has not been developed because of disagreement between the parties.  Plaintiff disputes that this legal theory is correct.

To begin with, it is not clear from the record that the November IEP actually "expired" in March 2005.  If it did not, the ALJ would not have had to rely on this theory in finding that a full IEP was in place through the end of the school year.  Even if the November IEP did expire, however, the ALJ was not necessarily incorrect in reaching its conclusion.  While an expired "stay put" IEP does not necessarily provide FAPE, keeping an expired IEP in place does not necessarily constitute a denial of FAPE.  See School for the Arts in Learning (SAIL) Pub. Charter Sch. v. Johnson, No. 02-1722 (RMC), 2006 WL 1000337, at *5–*6 (D.D.C. Apr. 13, 2006) (holding that keeping an "expired" IEP in place pending the development of a new IEP provided FAPE).  The ALJ's legal analysis in this regard was therefore not erroneous.

3.      Conclusions of Law No. 24 & 26–29

Plaintiff's main challenge to the ALJ's conclusions of law relate to the ALJ's ultimate determination that the District satisfied the procedural requirements of the IDEA for ESY 2005 and the 2005–2006 school year.  Plaintiff raises specific challenges to several of the individual conclusions supporting this determination.

In Conclusion of Law No. 24, the ALJ concluded that "[w]hile the District had an obligation to present a complete IEP, based upon the discussions that occurred at those meetings [in April, May and June 2005], the District was acting diligently in getting the necessary information to put together a complete IEP" for ESY 2005 and the 2005–2006 school year.  Plaintiff asserts that this finding is

16

irrelevant to the issue of FAPE, and that the ALJ cited no authority supporting a "diligence exception" to the IDEA's procedural requirements.

In Conclusion of Law No. 26, the ALJ concluded as follows:

> The parents were present, actively participating, had the benefit of counsel at the [April, May and June 2005] meetings, and had the insights from trusted, long term service providers present for input. The parents had the opportunity to discuss and give input on the goals and objectives, specifically the behavioral goals, which were discussed at the June 14 IEP meeting, and it was the parents' attorney who indicated that the behavioral goals were not appropriate and needed to be rewritten. The District did so in an expeditious manner, and mailed the goals to the parents. The June 14 meeting including [sic] discussions about in home services and educational placement, and it was well known what was contemplated for ESY 2005 and the 2005–2006 school year.

Plaintiff asserts that this discussion amounts to a conclusion that the District satisfied the Act's procedural requirements by including the parents in the IEP meetings despite the fact that the District submitted revised behavioral goals to the parents after the June 14 IEP meeting. Plaintiff further claims that Conclusions of Law Nos. 27–29[6] acknowledge "Defendant's omissions, procedural violations, and the resulting technically flawed IEP offer for the 2005–2006 school year," but that the ALJ improperly excused these violations. Plaintiff asserts that the ALJ misunderstands the holding in Union Sch. Dist. v. Smith, 15 F.3d 1519 (9th Cir. 1994) and the line of cases following it.

In Union, 15 F.3d at 1525, the court considered whether the District was required to make a formal written offer for a placement that a child's parents had expressed unwillingness to consider. The court held that, given the importance of the IDEA's procedural requirements, "a school district cannot escape its obligation under the IDEA to offer formally an appropriate educational placement by arguing that a disabled child's parents expressed unwillingness to accept that placement." Id. at 1526. Emphasizing the importance of the formal offer requirement, the court continued:

> We find that this formal requirement has an important purpose that is not merely technical, and we therefore believe it should be enforced rigorously. The requirement of a formal, written offer creates a clear record that will do much to eliminate troublesome factual disputes many years later about when placements were offered, what placements were offered, and what additional educational assistance was offered to supplement a placement, if any. Furthermore, a formal,

17

UNITED STATES DISTRICT COURT
For the Northern District of California

specific offer from a school district will greatly assist parents in presenting complaints with respect to any matter relating to the educational placement of the child.

Id. (internal quotations omitted).

The ALJ cited Union in its conclusions of law and determined that plaintiff's parents were well-informed and that the written IEP offers were clear. This is not a case such as Union where the district utterly failed to make any formal offer whatsoever. Rather, the District in this case provided numerous written offers to plaintiff's parents as the District worked with plaintiff's parents to develop plaintiff's IEP. Furthermore, the revisions that the District made after the June 14 meeting were made at the request of plaintiff's attorney. The fact that plaintiff's parents were not involved in further formulation of the IEP for ESY 2005 and the 2005–2006 school year appears to be the result of plaintiff's parents conscious decision to stop cooperating with the District beginning in June 2005. The District made several attempts to schedule additional meetings after June 24. Admin Rec. at 262, 273–74. The District then attempted to convene a meeting in September 2005, but the meeting ended when plaintiff's parents left the meeting. September 28, 2005 Transcript at 79:2–80:2. The District should not be held accountable for plaintiff's parents' lack of cooperation. In sum, the District made every effort to include plaintiff's parents in the formulation of the June IEP. Based on this record, the ALJ concluded that the pertinent procedural requirements were met. The ALJ's application of Union to these facts did not constitute erroneous legal analysis.

### 4. Prior Written Notice of IEP Offers

Finally, plaintiff asserts that the ALJ failed to acknowledge or address the fact that the District failed to satisfy the procedural requirement of sending "prior written notice" regarding any element of any of its three IEP offers except the two such notices it sent denying plaintiff's parents' request for Stepping Stones. The District has not responded to this argument in the context of defending the ALJ's decision. Accordingly, the question of whether the District provided "prior written notice" regarding the three IEP offers will be considered without deference to the ALJ's determination.

II.     Denial of FAPE

Plaintiff's motion raises several direct arguments regarding the District's alleged failure to provide FAPE as required by the IDEA.  Plaintiff alleges that, with respect to each of the three time periods in question, the District denied plaintiff his right to (1) parent participation in the development of his IEP, (2) the participation of his special education teacher in the development of his IEP,  (3) the receipt of a clear, written IEP offer, (4) the receipt of an offer of program, placement and services that addressed each of his identified needs, and (5) the receipt of prior written notice of proposed changes to his IEP.  Plaintiff also asserts that the District's failure to convene an IEP meeting until after March 24, 2005 constituted a denial of FAPE.  With the exception of the allegation that the District's offers did not address plaintiff's individual needs, plaintiff's claims allege procedural violations of the IDEA.

A.      The Timing of the IEP Meetings

Plaintiff asserts that the District violated the procedural requirements of the IDEA by failing to convene an IEP meeting prior to March 24, 2005, the date specified on the November IEP. Regarding this issue, the District appears to assert that the November IEP was to remain in effect throughout the 2005–2006 school year subject to the development of a transition plan from SI to another provider.  The District claims to have developed a suitable transition plan as of January 28, at which point they informed plaintiff's parents that PLAY was prepared to begin assuming behavioral supervision services and that a district staffmember was prepared to take over plaintiff's paraeducator responsibilities.  The District therefore claims that an adequate IEP was in force throughout the 2004–2005 school year.

The ALJ's determination on this point, as characterized by plaintiff, adopts the District's position that the classroom placement and services provided for in the November IEP remained in place and appropriate through the end of the school year.

The parties are at odds regarding the significance of the March 24 date on the November IEP.  Plaintiff interprets the date as the date upon which the November IEP expired, and that

19

UNITED STATES DISTRICT COURT
For the Northern District of California

1    therefore the district was required to develop a new IEP prior to that date.  The District claims that

2    March 24 was the "annual review date," meaning the date on which the IEP team was supposed to

3    meet in order to develop IEPs for the 2005 ESY and 2005–2006 school year.  The District therefore

4    claims that the November IEP did not "expire" until the end of the 2004–2005 school year.

5        The document on its face is ambiguous as to the meaning of the March 24 date.  See Admin.

6    Rec. at 16.  The date appears in the upper right-hand corner of the first page, in a box with several

7    check-boxes.  The check-boxes are labeled "New referral," "Annual," "Triennial," "Transition" and

8    "Review."  Below these boxes are the words "Next review:" followed by a blank line.  The

9    "Review" box is checked, and "3–24–05" is handwritten on the line next to "Next review:".  Thus,

10    March 24, 2005 was clearly a "review date" of some sort.  However, the November IEP itself is

11    marked as a "Review," and therefore the date could indicate that another such document was to be

12    prepared on March 24, 2005.  Fortunately the court need not resolve this ambiguity.  The ALJ sided

13    with the District's interpretation, and this court will defer to the ALJ's specialized knowledge in this

14    regard.  Amanda J, 267 F.3d at 888.  In other words, plaintiff has not satisfied his burden of proof in

15    showing that the ALJ's findings should be disturbed.

16        Furthermore, even if the November IEP in fact expired on March 24, other factors weigh

17    against finding for the plaintiff.  The District did convene a meeting shortly after the alleged

18    "expiration" date, on April 5, 2005.  Furthermore, plaintiff's parents had taken him out of school as

19    of February, and it is therefore unclear what benefit plaintiff would have received had the District

20    been compelled to meet on or before March 24, 2005.  The District's conduct with respect to the

21    timing of the IEP meetings therefore did not "result in the loss of educational opportunity,"

22    "seriously infringe the parents' opportunity to participate in the IEP formulation process," or

23    "caus[e] a deprivation of educational benefits."  Amanda J., 267 F.3d at 892.  In sum, plaintiff has

24    failed to demonstrate an actionable procedural violation with respect to the alleged lack of an

25    effective IEP during the latter portion of the 2004–2005 school year.

26

27

28

20

1          B.      Participation of Required Individuals in IEP Meetings

2          The main thrust of plaintiff's procedural argument is that the District deprived plaintiff of the

3   participation of his parents and special education teacher in the development of the IEP by revising

4   the June 14 IEP after the June 14 meeting.  Because these revisions were made without consulting

5   plaintiff's parents or special education teacher, plaintiff argues, the District violated the procedural

6   provisions of the IDEA.  The District asserts that plaintiff's parents attended and actively

7   participated in the three meetings held between April 5, 2005 and June 14, 2005.  This is supported

8   by the record, and plaintiff does not appear to dispute that plaintiff's parents attended the formal IEP

9   meetings that took place during this period.  As to the participation of plaintiff's special education

10  teacher, the District asserts that plaintiff's District special education teacher, Mr. Douglas, was

11  present at every IEP meeting, and that Stepping Stones representatives were present at each IEP

12  meeting beginning in April.  However, neither these special education teachers nor plaintiff's

13  parents participated in writing the revisions to the June 14 IEP that the District presented to

14  plaintiff's parents after that meeting.

15         The issue, therefore, is whether the revisions to the IEP by Angela Connor without direct

16  participation by plaintiff's parents and special education teachers violated the procedural

17  requirements of the IDEA.

18         The District asserts that the revisions proposed on June 24 were made by Connor at the

19  request of plaintiff's attorney.  This assertion is supported by the record.[7]  The June 24 letter

20  purports to provide "a description of the District's complete proposed offer for Summer 2005 and

21  the 2005–06 school year," and further states: "We are happy to discuss this proposal to get your

22  input, at the next IEP meeting, which we are trying to schedule."  Admin Rec. at 262.  The District

23  asserts that it convened an IEP meeting in September 2005 in order to seek plaintiff's parents input,

24  but that the meeting was stopped when the parents walked out of the meeting.

25         Courts have placed great importance on parental involvement in the development of IEPs.

26  See Shapiro, 317 F.3d at 1077 ("The importance of parental participation in the IEP process is

27  evident."); Amanda J., 237 F.3d at 892 ("Procedural violations that interfere with parental

28

UNITED STATES DISTRICT COURT
For the Northern District of California

21

UNITED STATES DISTRICT COURT
For the Northern District of California

1   participation in the IEP formulation process undermine the very essence of the IDEA.").  In an oft-

2   quoted passage from Rowley, 458 U.S. at 205–206, the Supreme Court stated:

3            It seems to us no exaggeration to say that Congress placed every bit as
             much emphasis upon compliance with procedures giving parents and
4            guardians a large measure of participation at every stage of the
             administrative process . . . as it did upon the measurement of the
5            resulting IEP against a substantive standard.

6        In Shapiro, 317 F.3d at 1077, the district failed to include the child's parents in an IEP

7   meeting.  The district contended that, despite their absence at the meeting, the parents "contributed

8   adequately to the . . . IEP because the [district] mailed the IEP to them for their approval and they

9   participated in the prior IEP meetings."  Id. at 1078.  The court held that such "[a]fter-the-fact

10  parental involvement is not enough," and that parents must be involved in the IEP "creation

11  process."  Id.

12       In Target Range, 960 F.2d at 1484, the district independently developed the IEP without the

13  input and participation of the child's parents or teacher, and failed to make efforts to include these

14  required individuals.  The court held that this was a procedural violation of the IDEA.  Id. at 1485.

15       Here, it is apparent that plaintiff's parents and teachers were actively involved in the creation

16  of the June 2005 IEP.  The revisions made to the June 14 IEP were not the result of a separate IEP

17  meeting from which plaintiff's parents and teachers were excluded as in Shapiro, or a wholly

18  independent internal process as in Target Range.  Rather, the revisions were made by Connor at the

19  request of plaintiff's attorney.  Furthermore, even after plaintiff's parents and teachers participated

20  and provided input during the June 14 meeting, plaintiff's parents were offered additional

21  opportunities to provide input via the June 24 letter.  While it is troubling that the District's

22  "complete proposed offer" contained a glaring omission[8] and was sent four days before the

23  beginning of ESY 2005, the record shows that the full IEP team had been working consistently since

24  early April in order to develop the IEP.  The timing of the offer left little room for further input

25  regarding the proposed IEP for ESY 2005.  However, given the substantial previous input from

26  plaintiff's parents and teachers and the inability of the team—including plaintiff's parents—to

27  decide on an IEP prior to that time, it is evident that the District did not deny plaintiff the

28

22

UNITED STATES DISTRICT COURT
For the Northern District of California

1  opportunity for his parents and teachers to participate in the formulation of his IEP for ESY 2005

2  and the 2005–2006 school year.

3

4           C.    <u>Prior Written Notice</u>

5          As an additional procedural challenge, plaintiff asserts that the District failed to "provide

6  'prior written notice' regarding any element of its three IEP offers except the two such notices it sent

7  denying parents' request for Stepping Stones."  It is not clear precisely what plaintiff is seeking with

8  this argument, as plaintiff does not identify any changes or rejections that he claims required prior

9  written notice.  Absent a clear argument as to what the plaintiff seeks, the court finds no evidence

10  that the District failed to comply with the Act's prior written notice requirements.

11

12           D.    <u>Formal Written Offers</u>

13          As a final procedural complaint, plaintiff alleges that the District failed to issue a formal

14  written offer to plaintiff as required by <u>Union</u>.  As discussed above, plaintiff asserts that no offer

15  whatsoever was made to cover the period between March 25 through April 4, 2005.  Plaintiff further

16  alleges that the purported offers made beginning April 5 did not satisfy the formal requirements of

17  the IDEA.  Plaintiff asserts that the June 14 offer did not specify a classroom for the 2005–2006

18  school year or behavioral services for ESY 2005 or 2005–2006, though plaintiff acknowledges that

19  the June 24 and 27 letters specified classroom placements for both periods.  Plaintiff further asserts

20  that the letters dated in late June did not specify behavioral services for home programs for the 2005

21  ESY or 2005–2006 year, though plaintiff acknowledges that such home programs were included in

22  the June 14 IEP offer.  Finally, plaintiff asserts, without citation to authority, that the differing

23  versions of the same offer embodied in the June 14 IEP and the June 24 and 27 letters "evinces the

24  kind of procedural violation that can only be considered absolutely fatal to any offer."

25          The District claims that the offers it provided to plaintiff's parents in the letters dated June 24

26  and June 27, 2005, taken together with the formal written offer provided at the June 14 IEP meeting,

27  constituted a formal offer in compliance with the IDEA.[9]  The District asserts that plaintiff's mother

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  testified that she understood the District had offered a home program.  The District's

2  characterization of the requirement in <u>Union</u> is that the formal written offer must "place the parents

3  on notice that they must decide whether the offer would be appropriate under the IDEA."  Def. Opp.

4  at 11.

5       The formality requirements set forth in <u>Union</u> go beyond the notice function suggested by the

6  District.  In addition to advising the parents as to whether a due process action is necessary, the

7  formal written offer requirement "creates a clear record that will do much to eliminate troublesome

8  factual disputes many years later about when placements were offered, what placements were

9  offered, and what additional educational assistance was offered to supplement a placement, if any."

10  <u>Union</u>, 15 F.3d at 1526.  No such factual record or notice existed in <u>Union</u> because there was no

11  written notice provided whatsoever.  Here, by contrast, the District provided three separate written

12  offers, creating a factual record of what was being offered by the District.  Plaintiff's parents had

13  been directly involved in the formal IEP meetings and were aware of the services being offered.

14  Plaintiff does not assert that his parents were confused by the "different versions" of the June offer,

15  on that the offers were not sufficiently formal.  The court therefore finds that the District complied

16  with the written offer requirements of the IDEA.

17

18       E.    <u>Substantive Violations</u>

19       Plaintiffs allege that the District substantively denied plaintiff FAPE by failing to provide an

20  offer of program, placement and services that addressed each of his identified needs.  Specifically,

21  plaintiff points to the written documentation provided by the District and the notes of the various

22  IEP meetings and claims that both sets of documents omit discussions of necessary elements of

23  plaintiff's IEP.  Specifically, the issue is whether the IEP was "reasonably calculated to enable the

24  child to receive educational benefits."  <u>Rowley</u>, 458 U.S. at 206.

25       Plaintiff alleges that the District did not offer any written classroom/academic goals and

26  objectives for the 2004–2005 school year until June 14, 2005, thereby substantively denying him

27  FAPE for the portion of the 2004–2005 school year after the expiration of the November IEP.

28

Plaintiff further alleges that, while plaintiff's academic goals were discussed and revised beginning with the April 5, 2005 IEP meeting, the District failed to offer revised behavioral goals for the period from March 25 to the end of the 2004–2005 school year.  Likewise, plaintiff alleges that the District failed to offer AAC goals (which were written to extend to February 2005), occupation therapy goals and services and speech/language goals and services (both of which were written to extend to March 2005) until April 5.

As discussed above, it is not at all clear that the November IEP actually expired in March 2005.  In any case, the District was prepared to keep the November IEP in place through to the end of the 2004–2005 school year, and plaintiff has identified no substantive deficiencies in the November IEP that would have rendered the plan inappropriate for those remaining months.  Plaintiff has therefore failed to demonstrate a substantive denial of FAPE for the 2004–2005 school year.

F.      Summary

The court is not persuaded that the IEPs that were developed for the periods of time in question were legally insufficient.  The District had the necessary competence and personnel, and was able to conform to the IEPs sufficiently to meet the needs of plaintiff.  The court reaches this conclusion regardless of the level of deference afforded to the ALJ.  Many of the ALJ's conclusions were adequately supported by his own factual findings.  Although the ALJ's decision contains some gaps, the record as a whole supports the conclusions of the ALJ.

III.    Attorneys' Fees and Costs

Because plaintiff has not established that he is the prevailing party in this action or the underlying due process action, plaintiff is not entitled to attorneys' fees or costs.

CONCLUSION

For the foregoing reasons, the court DENIES plaintiff's motion for summary judgment. Because plaintiff bears the burden of showing that the ALJ's decision should be overturned, and plaintiff has failed to meet his burden, the court GRANTS defendant's motion for summary judgment.

IT IS SO ORDERED.

Dated:     January 25, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

26

**ENDNOTES**

1.  Unless otherwise specified, the facts are taken from the parties' Joint Statement of Undisputed Facts.

2.  The parties dispute whether this IEP provided for services until March 24, 2005 only or through the end of the 2004–2005 school year.

3.  See Administrative Record (hereinafter "Admin. Rec.") at 257–261.

4.  See Admin. Rec. at 262.

5.  California Government Code Section 11513(d) provides:

> Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. An objection is timely if made before submission of the case or on reconsideration.

6.  Conclusion of Law 27 states:

> In a letter from the District to the parents dated June 24, the District indicated that they would discuss the goals, wanted the parent's input, and were trying to schedule a further IEP meeting. The parents did not respond to that request. The District admits that it omitted the home portion of the offer. However, all parties knew that in home support was always contemplated as part of the plan and through District inadvertence, it was omitted from the final written offer sent to the parents. Similarly, PLAY had been offered as the provider, but when the parents would not consider PLAY, the District changed to a District behavior analyst as the service provider. Both were well known and discussed at the meetings. Neither the parents nor the parents' attorney called or otherwise attempted to find out why these were omitted, which seems illogical in light of the extensive discussions input, history and extensive communication that had been going on in this case.

> Conclusion of Law No. 28 states:

> It was a procedural error for the District to omit portions from the final offer in the letter, but it was not the type of error given the circumstances in this case that impeded [plaintiff's] right to a FAPE, significantly impeded the parent's [sic] opportunity to participate in the decision making process regarding the provision of a FAPE to the

27

1
2

parents' child, or cause a deprivation of educational benefits. (20 U.S.C. §1415(f)(3)(E).)

3

Conclusion of Law No. 29 states:

4
5
6
7
8
9
10
11
12
13
14

> The District must not prevent the parents from participating meaningfully in the IEP process. (*W.G. v. Bd. Of Trustees of Target Range School District No. 23, supra*, 960 F.2d at 1483.) Further, the District is required to make a formal offer of FAPE to the student in writing, even though the parents have indicated they will not accept the offer. (*Union School District v. B. Smith* (9th Cir. 1994) 15 F.3d 1519, 1525–1526.) The facts of this case indicate that the District facilitated the parent's [sic] participation in the IEP process, and made a clear offer of placement. The District sent multiple emails and letters to the parents urging their input into the transition offer for [plaintiff]. Furthermore, the offer, while technically flawed, reflected the multiple communications and discussions that had occurred involving the District, the parents, and the parents' attorney for over a year about establishing a transition for [plaintiff] and returning him to the educational setting. The District's actions more than complied with the law and any delays or minor errors do not rise to the level of the violations that occurred in the cases cited above.

15
16
17
18

7. The June 14 IEP comments section states that "Attorney for the district indicated she believes the goals need to be rewritten, indicating they are inappropriate." Admin. Rec. at 224. Plaintiff's mother testified that the identification of the objecting attorney as the District's attorney is an error, and that it was plaintiff's attorney who indicated that the goals needed to be rewritten. Oct. 3, 2005 Transcript at 222:15–223:6.

19
20

8. As explained below, the June 24 and 27 letters inadvertently omitted plaintiff's home program in the description of the offers for ESY 2005 and the 2005–2006 school year.

21
22
23
24

9. The District asserts that plaintiff's mother testified that she understood that the District had offered a home program. However, plaintiff's mother's testimony states only that she understood a home program to have been offered in the June 14 IEP. Oct. 3, 2005 Transcript at 228:15–25. Plaintiff's mother never testified that she understood the June 24 and 27 letters to have offered home programs. This does, however, support the finding that plaintiff's parents were aware that a home program had been developed and offered by the District prior to the June 24 and 27 letters.

25
26
27
28